**SEBASTIAN INTERNATIONAL, INC. Plaintiff,**

v.

**Vincenzo RUSSOLILLO, an individual, et al., Defendants.**

**No. CV–00–03476 CM (JWJX).**

United States District Court, C.D. California.

Jan. 18, 2001.

---

William C. Conkle, John A. Conkle, Scott A. Hampton, Darren Marlowe, Conkle & Olesten, Santa Monica, CA, Thomas J. Nolan, Joanne E. Caruso, Michael Turrill, Howrey Simon Arnold & White, Los Angeles, CA, for Sebastian International Inc.

Norman H. Levine, Alison F. Clarke, Michelle M. Lynn, Greenberg Glusker Fields Claman, Machtinger & Kinsella, Los Angeles, CA, Linda K. Netsch, Claman & Machtinger, Los Angeles, CA, for Roger Ladd, Damian Christopher Inc.

Robert W. Hodges, Melodie K. Larsen, J. Larson Jaenicke, Rintala Smoot Jaenicke & Rees, Los Angeles, CA, for Qualify King Distributors Inc., Med–X Corporation, Rite Aid Corporation, CVS Corp.

Jeffrey A. LeVee, Amy A. Stathos, Eric Patrick Enson, Jones Day Reavis & Pogue, Los Angeles, CA, Darryl E. Towell, Jones Day Reavis & Pogue, Irvine, CA, for TSA Distributing Inc, Ken Teepe.

Luis A. Carrillo, Luis A. Carrillo Law Offices, Montebello, CA, Steven H. Hibbe, Miami, FL, for Trapeza Overseas Inc., Jose I. Arguelles.

Richard G. Simon, Richard G. Simon Law Office, San Bernardino, CA, for Farshid Ben–Cohen.

Eric Shih, Mark R. Bateman, Charles S. Barquist, Mary F. Panetta, Morrison & Foerster, Los Angeles, CA, for Phar–Mor Inc.

Steven M. Perry, Devon A. Gold, Munger Tolles & Olson, Los Angeles, CA, for Randalls Food Markets Inc.

Dennis G. Martin, Willmore F. Holbrow, III, Blakely Sokoloff Taylor & Zafman, Los Angeles, CA, John Emmett, John Emmett Law Offices, Dallas, TX, for Nortex Drug Distributors Inc.

Edmund J. Towle, III, Michael C. Denison, Towle Denison Smith & Tavera, Los Angeles, CA, for Tosvar Aerosol S A S., Paolo Gioia.

C–Zors Beauty, Santa Monica, CA, pro se.

Rickey G. Ivie, Ivie McNeill & Wyatt, Los Angeles, CA, for Christina's Hair Design.

## AMENDED ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

MORENO, District Judge.

Presently before the Court is Defendants CVS Corporation, Rite Aid Corporation, and Quality King's Motion to Dismiss Sebastian International's First Amended Complaint. Having read the Moving Papers, the Opposition, and the Reply, as well as having heard oral argument on November 27, the Court hereby *denies* Defendants' Motions to Dismiss for the following reasons.[1]

---

1. Defendants Nortex Drug Distributors, Inc; T.S.A. Distributing Inc.; Mr. Ken Teepe; Roger Ladd; and Damian Christopher, Inc. have joined in this Motion.

I.

*Procedural and Factual Background*

On March 31, 2000, Plaintiff Sebastian International, Inc. filed a Complaint in this Court alleging fourteen different causes of action. A flurry of Motions to Dismiss followed, all of which were heard on July 31, 2000. On August 25, this Court dismissed *inter alia* Plaintiff's claims for violation of the Racketeer Influenced and Corrupt Organizations Acts ("RICO") 18 U.S.C. §§ 1962(a) and (b) and Plaintiff's common law claim for intentional interference with prospective economic advantage. On September 22, Plaintiff filed a First Amended Complaint repleading all of the above previously dismissed claims.

The facts of this case were set out in this Court's last order, and shall only be discussed summarily at this time. Plaintiff Sebastian International ("Sebastian"), a California corporation, is a designer and distributor of professional hair care products including hair sprays, shampoos, conditioners, coloring gels, and mousse. Sebastian does not distribute its products through retailers. Instead, Sebastian produces its products for use and sale at hair care salons and beauty schools. The salons and schools are contractually obligated to sell Sebastian products only to consumer clientele, and not to other retailers or distributors. Sebastian's more popular products bear a holographic label which is used to identify and track the product.

Despite the contractual limitations imposed on salons, Sebastian products are sold by retailers. This is a result of so-called product diversion, whereby merchandise intended for sale and use in salons is diverted and sold to drug stores and supermarkets. Defendants are alleged to induce authorized distributors and salons to divert Sebastian-brand products and then remove the identifying holographic labels that have been placed on the products by Sebastian, a process identified as "decoding." By removing the labels, the identity of the supplying source is concealed.

Besides receiving and selling diverted products, Defendants are alleged to be involved in the distribution and sale of counterfeit Sebastian products. Sebastian alleges that Defendants remove Sebastian's holographic labels in order to pass off the counterfeit merchandise as genuine Sebastian products. Sebastian has notified certain of the Defendants of the presence of counterfeit and diverted Sebastian products, and that Defendants should not sell products without the holographic labels. Despite notice, some of the defendants have continued to sell diverted and counterfeit Sebastian products.

II.

*Applicable Standard*

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). Moreover, "it is axiomatic that the Motion to Dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. City of Santa Barbara,* 813 F.2d 198, 201 (9th Cir.1986).

The issue on a Motion to Dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994). The court is not required, however, to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn

**634**

from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994).

Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan*, 108 F.3d at 249 (citations omitted). Therefore, a court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Where plaintiff's complaint should be dismissed for failure to state a claim, the plaintiff should be given "at least one chance to amend the complaint" under Fed. R. Civ. Proc. 15(a) before dismissing the action with prejudice. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991). A plaintiff should be denied leave to amend a complaint, if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co. Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986).

## III.

### Discussion

#### A. RICO Claims

Although Defendants move to dismiss Plaintiff's RICO claims brought under 18 U.S.C. §§ 1962(a), (b), and (c) [2], a closer reading makes clear that Defendants' Motion appears to attack Plaintiff's RICO claims solely "To the extent Sebastian again attempts to rest its RICO claims on mail or wire fraud." *See* Motion at p. 6. However, in addition to wire and mail fraud, Plaintiff has alleged Defendants have engaged in other predicate criminal acts. *See* FAC at ¶ 152. Thus, Plaintiff's RICO claims could proceed, even if the Court were to find the wire and mail fraud allegations were not sufficiently pled.

In order to state a claim under §§ 1962(a), (b) and (c), a plaintiff must plead facts establishing 1) that the defendant, 2) through the commission of predicate criminal acts which constitute a pattern of racketeering activity 3) directly or indirectly invests in, or maintains an interest in, or participates in, 4) an enterprise. *See Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2nd Cir.1983) *cert. denied* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684. However, the real question here, is whether Plaintiff has adequately alleged predicate acts of mail and wire fraud.[3]

To properly plead a violation of the mail fraud statute (18 U.S.C. § 1341), a plaintiff must show that: 1) the defendants formed a scheme or artifice to defraud; 2) the defendants used the United States mails in furtherance of the scheme; and 3) the defendants did so with the specific intent to deceive or defraud. *See Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1399–1400 (9th Cir.1986).[4] Additionally, Federal Rule of Civil Procedure 9(b) requires that a plaintiff alleges his fraud claim with particularity, stating

---

2. In addition, each claim includes a related conspiracy claim under § 1962(d).

3. Other than mail and wire fraud, Plaintiff has also alleged predicate acts constituting a pattern of racketeering activity of trademark counterfeit trafficking; criminal copyright in-

fringement; and commercial bribery. *See* FAC at ¶ 153.

4. Pleading a violation of the wire fraud statute (18 U.S.C. § 1343) *differs only in that* instead of use of the mails the defendants used the United States wires.

the time, place, and specific content of false representation as well as the identities of the parties to the misrepresentation. *Id.* at 1401.

 There has been some heat generated in the papers and at oral argument over the question of what Federal Rule of Civil Procedure 9(b) [5] actually requires. Plaintiff argues in its Opposition that Rule 9(b) merely requires that the elements of mail fraud or wire fraud be pled with specificity, and it does not require a plaintiff to plead the specific falsity in the mailed or wired communications. *See* Opp'n at p. 4. Defendants, on the other hand, maintain that Rule 9(b) does require a plaintiff to plead the specific falsity and argue their Motion must be granted because Plaintiff has failed to meet this standard. *See e.g.* Motion at p. 4.

As *Murr Plumbing, Inc. v. Scherer Brothers Financial Services Co.,* 48 F.3d 1066 (8th Cir.1995) shows, however, both parties are right depending on the situation. In *Murr* the court stated in a footnote that:

> [t]he mail and wire fraud statutes encompass two types of fraud: those in which misrepresentations made, and those in which no misrepresentations are made. [citations] In a case of mail or wire fraud that does not involve a misrepresentation of fact, the 'circumstances' [referencing the language of 9(b) ] ... would consist of four elements: (1) a scheme to defraud; (2) intent to defraud; (3) reasonable forseeability that the mails (or wires) would be used; and (4) use of the mails (or wires) in furtherance of the scheme.

*Murr Plumbing, Inc.,* 48 F.3d at 1070 n. 6. This Court finds *Murr*'s reasoning persuasive. The Supreme Court has recognized that in a mail fraud case the mailings only need to be in furtherance of a scheme to defraud, and do not themselves need to be fraudulent or untrue. *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Requiring plaintiffs in mail and wire fraud cases to always plead false statements, would produce the illogical result of undoing *Schmuck*'s reasoning.

In *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1330 (7th Cir.1994) the Seventh Circuit reached a similar conclusion to *Murr* writing:

> We recognize, of course, that a given mailing or wire communication need not be fraudulent on its face in order to constitute an act of mail or wire fraud; even innocuous communications can qualify for this purpose so long as they are incident to an essential part of the scheme. [citations] But in this case the plaintiffs rely on the mailings and wire communications themselves as the acts of fraud.

*Id.* at 1330–1331. Here, Sebastian does not rely on mailings and wirings as the acts of fraud, but rather as "incident to an essential part of the scheme." Therefore, under *Jepson* and *Murr* Sebastian does not need to plead the "falsity" of the mailings and wirings.

Moreover, the Ninth Circuit precedent relied on by Defendants is distinguishable from the present case, because in those cases the alleged fraud was the communication. In *Schreiber,* for example, the alleged fraud was that defendants falsely represented that the products it purchased from the manufacturer would not be sold to retailers in the 48 contiguous states. *Schreiber,* 806 F.2d at 1400. Also, *Alan Neuman Productions Inc. v. Albright,* 862 F.2d 1388 (9th Cir.1988) *cert. denied* 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124 appears to be predicated on false state-

---

**5.** Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Rule is said to serve three purposes: 1) protecting a defendant's reputation from harm; 2) minimizing "strike suits" and "fishing expeditions"; and 3) providing notice of the claim to the adverse party. *See Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1327 (7th Cir.1994).

ments as the complaint references "many acts of mail fraud." *Id.* at 1393.[6]

Additionally, the three district court cases cited by Defendants are also distinguishable because there too the alleged fraud was the communication. *See Richardson v. Reliance National Indemnity Co.*, 2000 WL 284211 C 99–2952 at *4 (N.D.Cal. March 9, 2000) ("plaintiff specifically identifies the time, place, and content of numerous alleged misrepresentations"). Also, in *Camp v. Pacific Financial Group*, 956 F.Supp. 1541 (C.D.Cal.1997) the court stated "the plaintiffs list almost 20 paragraphs in the [complaint] which purportedly delineate fraudulent mailings by date, place and manner." *Id.* at 1551. And in *Comwest, Inc. v. American Operator Services, Inc.*, 765 F.Supp. 1467 (C.D.Cal. 1991) the court stated, "plaintiff has failed to allege the accurate revenues generated per phone or any other facts that would show defendants' representations were in fact false." *Id.* at 1471.[7]

This Court finds that Ninth Circuit authority does not require Sebastian to plead the falsity of any statements. In this case, Plaintiff does not rely on the mailings and wire communications themselves as the acts of fraud. Rather, the alleged scheme to defraud in this case includes selling and distributing counterfeit and decoded Sebastian products. *See* SAC ¶ 153. Moreover, the Court finds that Plaintiff has alleged the necessary elements set forth in *Murr*, although this issue was not the subject of Defendants' Motion.

A scheme to defraud has been established by alleging the Defendants pass off counterfeit products as genuine Sebastian products and Defendants improperly decode genuine Sebastian products. *See* SAC at ¶ 68, 69 89, 116. An intent to defraud, which need not be pled specifically, has been sufficiently alleged. *See* SAC at ¶ 153. Plaintiff has also alleged that use of the mails or wires in furtherance of the scheme was foreseeable. *See* SAC at ¶ 153 ("These actions reasonably contemplate regular use of mail and wire communication.") Finally, Sebastian has alleged use of the mails and wires in furtherance of the scheme. *See* SAC at ¶ 153 ("invoices, sent by U.S. mail and/or facsimile transmission...")

For all the above reasons, the Court finds that Defendants' Motion to Dismiss must be denied as Plaintiff has adequately pled the predicate RICO acts of mail fraud and wire fraud.

**B. Intentional Interference With Contractual Advantage:**

To state a claim for intentional interference with prospective economic advantage (IIPEA), the plaintiff must show the following:

1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; 2) knowledge by the defendant of the existence of the relationship; 3) intentional acts on the part of the defendant designed to disrupt the relationship; 4) actual disruption of the relationship; and 5) damages to the plaintiff proximately caused by the acts of the defendant.

6. *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397 (9th Cir.1991) *cert. denied* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 is distinguishable for other reasons. There, the court did not address whether it was necessary or not to plead the relevant statement's falsity.

7. Additionally, the authority cited by Defendants from outside this Circuit are also cases in which the alleged mail or wire fraud is predicated on alleged false statements. *See Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2nd Cir.1999) *cert. denied* 529

U.S. 1097, 120 S.Ct. 1831, 146 L.Ed.2d 775; *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2nd Cir.1993); *Tel–Phonic Services, Inc. v. TBS Intl., Inc.*, 975 F.2d 1134 (5th Cir.1992). Although in *Ahmed v. Rosenblatt*, 118 F.3d 886 (1st Cir.1997) *cert. denied* 522 U.S. 1148, 118 S.Ct. 1165, 140 L.Ed.2d 176 the fraud was not predicated on communication but rather a general scheme, that case was dismissed because plaintiff failed to allege the times, places or contents of any of the alleged mailings and the court did not reach the issue of falsity. *Id.* at 889.

*Blank v. Kirwan*, 39 Cal.3d 311, 330, 216 Cal.Rptr. 718, 703 P.2d 58 (1985). In addition, under California law, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.' " *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392–93, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995) (citation omitted). The focus for determining the wrongfulness of the defendant's intentional acts "should be on the defendant's objective conduct, and evidence of motive or other subjective states of mind is relevant only to illuminating the nature of that conduct." *Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co.*, 47 Cal.App.4th 464, 477, 54 Cal.Rptr.2d 888 (1996). Thus, lawful conduct that is "motivated by a black desire to hurt plaintiff's business" does not necessarily constitute wrongful conduct. *Id.*

A plaintiff can satisfy the wrongfulness requirement by showing that the defendant's conduct violates a statute, regulation or recognized common rule of law. *See LiMandri v. Judkins*, 52 Cal.App.4th 326, 341, 60 Cal.Rptr.2d 539 (1997); *PMC, Inc. v. Saban Entertainment, Inc.*, 45 Cal. App.4th 579, 602, 52 Cal.Rptr.2d 877 (1996) (recognizing that wrongful conduct may include acts "which are independently actionable, violations of federal or state law or unethical business practices, e.g., violence, misrepresentation, unfounded litigation, defamation, trade libel, or trademark infringement."); *Della Penna*, 11 Cal.4th at 408, 45 Cal.Rptr.2d 436, 902 P.2d 740 (Mosk, J., concurring) ("It follows that the tort may be satisfied by independently tortious means."); *see also In re Circuit Breaker Litigation*, 984 F.Supp. 1267, 1282 (C.D.Cal.1997) ("Defendants have the burden of demonstrating that Plaintiff's conduct is wrongful in the actionable sense.").

This Court finds that Plaintiff has pled an IIPEA claim. The fact that some customers may choose to no longer purchase Sebastian products because they have "allegedly lost their 'premium' or 'salon' appeal when they are generally available at retail outlets" satisfies the requirements for pleading an IIPEA claim. *See* FAC at p. 220(b). This Court finds Plaintiff's allegation is more than mere conjecture of future harm from an unidentified class of customers. Retention of these customers is more than "merely a hope of future transactions." *See Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134, 1140 (S.D.Cal. 1998). Moreover, Defendants have been allegedly placed on notice of the harm caused to Sebastian to their prospective economic relations, which includes loss of those customers who choose not to purchase Sebastian products because they have lost their premium appeal. *See* FAC at ¶ 58; 220(b).

Defendants cite *Westside Center Assoc. v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 49 Cal.Rptr.2d 793 (1996) for the proposition that plaintiff must show specific intent by the defendant to interfere with a specific prospective advantage. However, *Westside* had proceeded past the pleading stage, and therefore its reasoning is inapposite here where the Court seeks merely to determine whether the claim has been adequately pled. In light of the liberal pleading rules, the Court finds that Defendants' Motion to Dismiss must be denied.[8]

### IV.

### *Conclusion*

For all the above reasons, Defendants' Motions to Dismiss are hereby *denied.* IT IS SO ORDERED.

---

**8.** As discussed in the August 25 order, the *Della Penna* wrongfulness requirement is easily satisfied by the remaining allegations of wrongfulness, such as trademark and copyright infringement.